Maurice PETERSON, Appellant,

v.

James SHAKE, Judge, Jefferson Circuit Court, Appellee,

and

Commonwealth of Kentucky, Real Party in Interest.

No. 2002–SC–0695–MR.

Supreme Court of Kentucky.

Sept. 18, 2003.

Rehearing Denied Dec. 18, 2003.

Daniel T. Goyette, J. David Niehaus, Office of the Public Defender for Jefferson District Public Defender, Louisville, Counsel for Appellant.

James M. Shake, Hall of Justice, Louisville, Counsel for Appellee.

A.B. Chandler, III, Attorney General, Frankfort, Jeanne Deborah Anderson, Christie Irene Floyd, Louisville, Counsel for Real Party in Interest.

Opinion of the Court by Justice STUMBO.

Appellant, Maurice Peterson, is a convicted sex offender. Before Appellant was released from prison, he was assessed pursuant to the 1998 version of the Sex Offender Registration Act, KRS 17.500 et seq., and was determined to be a moderate risk sex offender. In addition, before being released back into society, Appellant was required to complete a standard entry form for the sex offender registry. Said form provided that Appellant was to notify law enforcement authorities of any change in address, and further provided that failure to do so was a Class A misdemeanor. He was subsequently released from state custody in June of 1999.

In August of 2001, the Kentucky State Police attempted to contact Appellant by mail in order to verify that Appellant still resided at the same Louisville address on file with the sex offender registry. After two notices were returned indicating that Appellant no longer resided at the address, the police visited the location, and confirmed Appellant did not live there. The authorities eventually found Appellant after it was discovered that he obtained a driver's license using a different Louisville address.

Consequently, in December of 2001, the Jefferson County grand jury issued an indictment against Appellant for providing false, misleading, or incomplete information on a sex offender registration form. Such offense is a Class D felony under the current version of KRS 17.510, enacted in 2000.

Appellant challenged the application of the 2000 version of the statute in the Jefferson Circuit Court. Judge James Shake determined that the 2000 version of KRS 17.510 was applicable to Appellant, and thus, Appellant was subject to prosecution for a Class D felony instead of a Class A misdemeanor.

Appellant petitioned the Court of Appeals for a writ prohibiting further prosecution of the indictment. In an order entered on August 15, 2002, the Court of Appeals denied Appellant's petition. He appeals as a matter of right. CR 76.36(7)(a).

It is clear that Appellant is subject to the 1998 version of the Kentucky Sex Offender Registration Act, as he was released from confinement following its enactment. However, the Commonwealth wishes to prosecute Appellant under the 2000 version. As a result, the primary question with which we are concerned is whether Appellant is subject to prosecution for a Class D felony, under the current version of KRS 17.510, for failing to provide a valid home address to the sex offender registry. After considering all of the pertinent facts, we conclude that Appellant is not.

The 1998 version of KRS 17.510(11) provides that "[a]ny person required to register under this section who violates any of the provisions of this section is guilty of a Class A misdemeanor." The 1998 version of KRS 17.510(12) provides that "[a]ny person required to register under this section who knowingly provides false, misleading, or incomplete information is guilty of a Class A misdemeanor." The current versions of both KRS 17.510(11) and (12), enacted following the adoption of Section 16 of 2000 Ky. Acts, Ch. 401, are identical to the previous 1998 versions, except that "Class D felony" replaces "Class A misdemeanor."

Appellant's contention is that the 2000 version of KRS 17.510 is not applicable to him because the 1998 version was effective

at the time he registered with the state sex offender registry.

Section 37 of 2000 Ky. Acts, Ch. 401, provides:

The provisions of Sections 15 to 30 of this Act shall apply to all persons who, after the effective date of this Act are required under Section 16 of this Act to become registrants, as defined in Section 15 of this Act.

The effective date of the 2000 version was April 11, 2000. Appellant argues that he could not have "become" a registrant because he had already been released from prison and further, was already registered as a sex offender prior to April 11, 2000. On the other hand, the Commonwealth argues that the 2000 version applies to Appellant because he satisfies the definition of "registrant," as set forth in the current version of KRS 17.500(4). While Appellant may meet the existing statutory definition of registrant, we do not find that that this controls Appellant's prosecution. Rather, we must look to the intent of the General Assembly when it enacted the 2000 version of the Sex Offender Registration Act.

■ This Court shall not speculate what the General Assembly may have intended but failed to articulate; instead, we determine the General Assembly's intention "from the words employed in enacting the statute." *Commonwealth v. Gaitherwright*, Ky., 70 S.W.3d 411, 414 (2002); *Gateway Construction Co. v. Wallbaum*, Ky., 356 S.W.2d 247, 249 (1962). After examining Section 37, we find no ambiguity with the language therein. It is quite apparent that the 2000 amendments were only intended to apply to persons who were required to *become* registrants following April 11, 2000. Merriam–Webster defines the word "become" as "to come to exist or occur" or "to emerge as an entity." *Webster's Third New International Dictionary of the English Language, Unabridged* 195 (1993).

Here Appellant was released from state custody and registered with the sex offender registry in June of 1999. It necessarily follows that Appellant could not have been required to "become" a registrant after April 11, 2000, since he was included in the database of registered sex offenders before that date. In other words, Appellant could not have "become" a registrant, as he already was one. In *Wallbaum, supra*, our predecessor Court stated that "legislative intent is at best a nebulous will-o'-the-wisp. Far better it is to be guided by the old adage, 'Plain words are easiest understood.'" *Id.* at 249. If it was the intent of the General Assembly to include individuals such as Appellant under the amended 2000 version of KRS 17.510, then it could have exactly said just that. However, such was not expressed. We will not add words to language we deem to be unambiguous. Thus, we hold that Appellant was not among the individuals the General Assembly intended to be subject to the 2000 version of KRS 17.510.

For clarification purposes, we find it necessary to discuss the Commonwealth's reliance on our recent opinion in *Martinez v. Commonwealth*, Ky., 72 S.W.3d 581 (2002). The Commonwealth asserts that since both the 1998 and 2000 versions of the Sex Offender Registration Statutes were applicable to the appellant in *Martinez*, the 2000 version must, unavoidably, apply to Appellant. This reasoning is misplaced. Pursuant to the current 2000 version of the statutes, a registrant is required to "register with the appropriate local probation and parole office in the county in which he or she intends to reside" upon his or her release by "the court, the parole board, the cabinet, or any detention facility." KRS 17.510(2). The foregoing language was applicable to the

appellant in *Martinez* because he did not secure his release before such language was enacted. Conversely, Appellant was released from custody in June of 1999, which predates the enactment of the current version of KRS 17.510(2). The Commonwealth's reliance on the *Martinez* opinion is misguided, and therefore, as we have already stated, Appellant simply was not among those the General Assembly intended to be affected by the 2000 version of KRS 17.510.

Next, we must determine whether Appellant is entitled to the extraordinary remedy which he seeks—the writ of prohibition. A writ of prohibition is not a substitute for the appellate process. *Green Valley Environmental Corp. v. Clay,* Ky., 798 S.W.2d 141, 144 (1990). It should only be used under the most exceptional of circumstances. *Shobe v. EPI Corp.,* Ky., 815 S.W.2d 395, 397 (1991). Generally, such a writ will only be granted if (1) the lower court is proceeding or is about to proceed outside of its jurisdiction or (2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result. *Southeastern United Medigroup v. Hughes,* Ky., 952 S.W.2d 195, 199 (1997). Presently, we are concerned with the first classification, as the lower court here, the Jefferson Circuit Court, is proceeding outside of its jurisdiction. KRS 24A.110(2) provides that the district court enjoys "exclusive jurisdiction to make a final disposition of any charge or a public offense denominated as a misdemeanor or violation, except where the charge is joined with an indictment for a felony." As noted earlier in this opinion, Appellant cannot be properly indicted for a Class D felony, as set forth in the 2000 version of KRS 17.510. The felony indictment charged against Appellant was void *ab initio.*

Thus, the circuit court did not have proper jurisdiction over Appellant.

We observe that Appellant has no other adequate remedy available at his disposal. If a writ were not issued, Appellant would experience great injustice in that he would have to endure a trial and possibly face conviction of a Class D felony, when the maximum charge he should face is a Class A misdemeanor. Considering we have determined that Appellant could not be indicted under the 2000 version of KRS 17.510, the felony indictment charged against him must be dismissed. If Appellant is to be prosecuted regarding an alleged violation of KRS 17.510, then he may be prosecuted under the 1998 version. If the Commonwealth continues to pursue this matter, the proper court of jurisdiction would be the Jefferson District Court.

Appellant also contends that the application of KRS 17.580 against him violates the due process protections of both the United States and Kentucky Constitutions. Under the 1998 version of the Sex Offender Registration Statutes, Appellant was provided a risk assessment hearing, where he was determined to be a moderate risk sex offender. He now argues that the entire 2000 version of the statutes is unconstitutional because the Commonwealth is permitted to place his photograph and other identifying information on an Internet web site before a hearing regarding his dangerousness has been held. In his reply brief, Appellant states that this argument is presented to the Court merely as another ground for concluding that the Jefferson Circuit Court does not have proper jurisdiction over this matter. Considering we have heretofore determined that the circuit court lacked the proper jurisdiction, we need not address this argument. However, we must stress that the application of KRS 17.580 does not violate Appellant's rights to due process under the federal or state constitution. *See Hyatt v. Common-*

*wealth,* Ky., 72 S.W.3d 566, 574 (2002) (public disclosure of sex offender information on an Internet web site is not contrary to either the federal or state constitution whenever public safety is concerned.)

Wherefore, for the reasons stated, we reverse the order of the Court of Appeals and remand with directions to issue a writ in conformity with the views expressed in this opinion.

LAMBERT, C.J.; COOPER, and JOHNSTONE, JJ., concur. KELLER, J., dissents by separate opinion, with GRAVES and WINTERSHEIMER, JJ., joining that dissent.

KELLER, Justice, dissenting.

I respectfully dissent. If the procedural prerequisites[1] for a writ are satisfied, "whether to grant or deny a petition for a writ is within the appellate court's discretion."[2] However, unless the petition alleges a double jeopardy bar,[3] a court may grant extraordinary relief *only* when the party seeking the writ satisfies the threshold requirements for such relief.[4] Thus, "[d]iscretion is not properly exercised when the appropriate remedy is to appeal."[5] In the case at bar, if Appellant is convicted of the felony offense, he will be able to litigate his KRS 17.510 claim in an appeal from the final judgment of conviction. Accordingly, Appellant has an adequate remedy by appeal. And, thus, without addressing the merits of Appellant's claim, I would affirm the Court of Appeals's denial of Appellant's petition for extraordinary relief.

Four (4) months ago, in *Flynt v. Commonwealth,*[6] this Court *unanimously* held

1. *See Southeastern United Medigroup v. Hughes,* Ky., 952 S.W.2d 195, 199 (1997) ("[A] writ ... should be granted only upon a showing that: 1) the lower court is proceeding or is about to proceed outside its jurisdiction and there is no adequate remedy by appeal, or 2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great justice and irreparable injury would result.") (quoting *Tipton v. Commonwealth,* Ky.App., 770 S.W.2d 239 (1989)).

2. *Commonwealth v. Deloney,* Ky., 20 S.W.3d 471, 473 (2000). *Cf. St. Clair v. Roark,* Ky., 10 S.W.3d 482, 485 (2000) (referencing "the oft-repeated maxim that although a writ of prohibition will issue only in exceptional circumstances, whether to do so lies within the sound discretion of the court in which the writ is sought."); *Haight v. Williamson,* Ky., 833 S.W.2d 821, 823 (1992) ("Issuance of, or refusal to issue a writ of prohibition is in the sound discretion of the trial court."); *Rowley v. Lampe,* Ky., 331 S.W.2d 887 (1960) ("The granting of prohibition may not be demanded as a matter of right, but the granting or refusal thereof lies within the sound discretion of this Court.").

3. *See Commonwealth v. Stephenson,* Ky., 82 S.W.3d 876, 880 (2002); *St. Clair v. Roark,* supra note 2 at 485 (authorizing the issuance of writs in double jeopardy cases notwithstanding the availability of an adequate remedy by appeal).

4. *Graham v. Mills,* Ky., 694 S.W.2d 698, 700 (1985) ("[Writs] may be used by a court in a discretionary manner and *only when the situation is so exceptional that there is no adequate remedy at law to prevent a miscarriage of justice.*" (emphasis added)); *Southeastern United Medigroup v. Hughes, supra* note 1 at 199 ("Where a petition for one of the extraordinary writs alleges that a lower adjudicatory body within its jurisdiction has acted incorrectly, *and the threshold factors of inadequate remedy and irreparable injury are satisfied,* the writ should be issued only upon a showing that the challenged action reflects an abuse of discretion." (emphasis added)). *See also* 52 AM. JUR. 2D *Mandamus* § 26 (2000) ("The issuing court's decision will not be disturbed on appeal unless there was an abuse of discretion. This means sound juridical discretion ... *in accordance with the principles governing the granting of extraordinary remedies.*" (footnotes omitted)).

5. 52 AM. JUR. 2D *Mandamus* § 28 (2000)

6. Ky., 105 S.W.3d 415 (2003).

that, although a criminal defendant must be convicted before he or she may appeal, traditional appellate review is adequate to address his or her allegations of pretrial error:

> In his petition for relief, Appellant Flynt argued that extraordinary relief was appropriate because, if he sought appellate review of the trial court's pretrial detention in an appeal from a final judgment of conviction, he would first have to suffer the collateral consequences associated with a felony conviction. Appellant Flynt attached an affidavit to his petition in which he referenced the adverse effect that his status as a convicted felon would have upon "his ability to vote, serve on a jury, and other civil rights afforded to non-felons while they are participating in the Kenton County Diversion Program" as well as his employment "in the operation of sexually oriented businesses," which are, according to Appellant Flynt, subject to licensing laws that prohibit the employment of convicted felons. *To accept Appellant Flynt's argument that the disqualifications associated with a felony conviction render his direct appeal right an inadequate remedy, however, we would have to hold that any ruling in a felony case can be reviewed via mandamus or prohibition prior to final judgment. And, because we have consistently found that traditional appellate review of allegations of error in felony cases constitute[s] an adequate remedy, we agree with the Court of Appeals that Appellant Flynt's right of direct appeal from any future judgment of conviction would afford him an adequate forum in which to raise his allegation of error.*[7]

Today's majority, however, concludes that Appellant does not have an adequate remedy by appeal. In so doing, the majority hangs its hat on the very same argument that we expressly rejected late this spring:

> We observe that Appellant has no other adequate remedy available at his disposal. If a writ were not issued, Appellant would experience great injustice in that he would have to endure a trial and possibly face conviction of a Class D felony, when the maximum charge he should face is a Class A misdemeanor.[8]

If post hoc appellate review is inadequate whenever a defendant will have to "endure a trial" and/or "possibly face conviction," then any criminal defendant with a complaint concerning a pretrial ruling—e.g., any defense motion to dismiss, motion to suppress, or motion *in limine* that was denied by the trial court—can circumvent "the ordinary administration of the laws" [9] by bringing what amounts to an interlocutory appeal in the form of a petition for extraordinary relief. As such, the majority appears to have taken the "extra" out of "extraordinary relief."

In my view, the Court was right in *Flynt v. Commonwealth,* and the majority is wrong today. Appellant has not made the required threshold showing for the relief he requests, and the Court of Appeals correctly denied Appellant's writ petition. I recognize that Appellant's writ petition raised an issue concerning the interpretation of KRS 17.510 that should be addressed by this Court, and I understand that it is tempting to decide that issue

7.  *Id.* at 422–3 (footnote omitted and emphasis added).

8.  *Peterson v. Shake,* Ky., 120 S.W.3d 707, 710 (2003).

9.  *Ohio River Contract Co. v. Gordon,* 170 Ky. 412, 186 S.W. 178, 181 (1916), *aff'd* 244 U.S. 68, 37 S.Ct. 599, 61 L.Ed. 997 (1917).

today and ignore the well-settled rule that *extra*ordinary relief "is unavailable unless the petitioner can demonstrate that traditional post hoc appellate procedures do not provide him or her with an adequate remedy." [10] This issue will inevitably appear before the Court in a procedural posture that permits us to reach the merits, however, and the Court should "reserve extraordinary relief for extraordinary cases" [11] by waiting for an appropriate case to interpret KRS 17.510.

GRAVES and WINTERSHEIMER, JJ., join this dissenting opinion.

10. *Flynt v. Commonwealth, supra* note 6 at 422 (citing *Kentucky Labor Cabinet v. Graham,* Ky., 43 S.W.3d 247, 251 (2001)).

11. *Roman Catholic Diocese of Lexington v. Noble,* Ky., 92 S.W.3d 724, 739 (2002) (Lambert, C.J. and Keller and Stumbo, J.J., dissenting) (citing *Garrard Co. Board of Education v. Jackson,* Ky., 12 S.W.3d 686, 689 (2000)).